UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
LAFAYETTE DIVISON

| | |
|---|---|
| RODGER FAIN, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) CAUSE NO.: 4:22-CV-31 |
| TWIN LAKES REGIONAL SEWER DISTRICT, | ) ) ) ) |
| Defendant. | ) |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Rodger Fain (hereinafter "Fain"), by counsel, files this Complaint and Demand for Jury Trial against his former employer, Defendant Twin Lakes Regional Sewer District ("Twin Lakes"), pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*.

### I. PARTIES, VENUE, AND JURISDICTION

1. At all relevant times, Fain was a citizen of Indiana and resident of Monticello, Indiana.

2. Twin Lakes is an independent municipal corporation organized under the laws of Indiana with their principal places of business located in Monticello, Indiana.

3. Fain, a male, was an "employee" of Twin Lakes as defined in 42 U.S.C. § 2000e(f). Fain worked for Twin Lakes from 2013 to 2021.

4. This Court has personal jurisdiction over Plaintiff and Defendant and venue is proper in this Court.

5. This Court has original subject matter jurisdiction over Fain's claims arising under Title VII of the Civil Rights Act of 1964, as amended. Venue is proper pursuant to 28 U.S.C. §

1391, in that Twin Lakes is subject to personal jurisdiction in the Northern District of Indiana, Twin Lakes regularly conduct business activities within the Northern District of Indiana, and the events giving rise to the claims occurred in the Northern District of Indiana.

6. This Court has supplemental jurisdiction over Fain's claims arising under Indiana law pursuant to 28 U.S.C. § 1367.

7. Fain satisfied his requirement to exhaust administrative remedies by filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on July 9, 2021, against Twin Lakes (Charge No. 470-2021-02856).

8. On or about February 4, 2022, the EEOC issued a Notice of Right to Sue related to Fain's Charge of Discrimination against Twin Lakes (Charge No. 470-2021-02856).

## II.  FACTUAL ALLEGATIONS

9. Plaintiff incorporates by reference all other allegations of his Complaint as if fully set forth here.

10. Fain was the Operations Manager/Operations Supervisor at Twin Lakes, an independent municipal corporation.

11. Twin Lakes employed Fain for approximately 9 years, up to and including April 2021.

12. For more than five years, Fain received good overall performance evaluations and had no issues with his work environment. He has maintained an excellent record of compliance with environmental laws during his tenure.

13. In 2019, Fain privately disclosed to his family that he is a homosexual male. He did not relay any information to Twin Lakes or his coworkers about his sexual orientation.

14. In February of 2020, Fain became aware of rumors spreading amongst his coworkers concerning his sexual orientation. While out to lunch he was approached by a cashier at Arnie's restaurant who stated: "Hey I saw Tony Brom (another Twin Lakes employee) earlier today" and, leaning across the cash register, continued, "Yea, he says you're gay."

15. Fain continued to deal with these private matters at work with coworkers attempting to get Fain to either confirm or deny the rumors about his sexual orientation.

16. Tony Brom ("Brom") implied Fain was gay during a weekly staff meeting. Fain responded, "It doesn't matter what I say, you guys are going to think I'm gay."

17. Tad Erikson, another Twin Lakes employee, approached Fain in his office and referenced the rumor, stating "it's OK if you are, I don't care." Fain did not confirm or deny the rumor.

18. Instances of unwelcome teasing about Fain's sexual orientation by Twin Lakes personnel became commonplace.

19. In approximately April of 2020, Fain was asked to fill out paperwork identifying his health conditions and medications. This was the first time Twin Lakes requested this information since he was initially hired several years earlier at Twin Lakes and obtained health insurance coverage.

20. Fain complained to Jackie Franklin ("Franklin"), the Twin Lakes Financial Manager, and Mike Darter ("Darter"), the Twin Lakes District Manager and Fain's direct supervisor, about having to provide his medical information. He also inquired about the need for the information since the new quote was for Anthem insurance, and the policy in effect at the time was also an Anthem policy and they already had all his information.

21. Franklin and Darter insisted that the information was required because Twin Lakes was shopping around for insurance from other insurance providers.

22. Fain reported that, along with his anti-convulsant medication taken to treat epilepsy, he was also taking Truvada, an antiretroviral medication used for preventing or reducing the risk of acquiring HIV-1.

23. Fain was very frightened that revealing his use of this medication would confirm the rumors already circulating concerning his sexual orientation and he would experience additional hostility, discriminatory animus, and adverse action. He felt required to disclose this information for fear that the insurance company would deny his claims for coverage if he failed to disclose it.

24. After submitting his medical information, Fain noticed a change in Darter's attitude toward him. Darter was more guarded and less talkative from that point forward. Fain feared that his medical disclosure had confirmed Darter's suspicions concerning the rumors regarding his sexual orientation.

25. In October of 2020, Fain and Franklin had a professional disagreement concerning mailing of certified letters at the Twin Lakes main office. Darter disciplined Fain (but not Franklin) for an alleged violation of Section III.N. of Appendix B of the District Personnel Policy Manual. Darter relied upon false allegations made by Franklin. Fain denied these allegations and refused to sign the written reprimand.

26. Due to the false allegations, Fain started taking audio-recordings whenever he entered the Twin Lakes main office to perform his duties.

27. On or about October 15, 2020, Fain was called to a meeting with Franklin and Darter concerning a rumor that Franklin and Darter were romantically involved.

28. During the meeting, Franklin accused Fain of starting the rumor, and Fain denied these allegations.

29. In discussing that rumor, the topic of the separate rumors of Fain's sexual orientation also arose. Fain notified Darter of the teasing and hostile work environment (defined in Section 2.07 of the District's Personnel Policy Manual) that he was enduring regarding this sexual orientation.

30. Fain reported, "The guys think I'm gay" and referred to Franklin when saying "talking to the guys behind my back about my dating habits." Fain explained, "I get teased all the time" and even referenced another instance of teasing by the Operations Staff saying, "The Fastenal guy comes to sell stuff to the guys and they're asking me if I want to 'get a room' with him."

31. Fain's complaint about the hostile work environment resulting from the negative treatment by his coworkers related to his sexual orientation constitutes protected activity under Title VII.

32. Darter's response to Fain's complaint was to state, "You don't have to put up with that . . . you choose to put up with it." Darter and Franklin made no effort to address Fain's complaints.

33. Darter and Franklin are responsible, as District supervisory personnel, for addressing hostile work environments and complaints about hostile work environments.

34. Franklin also serves as the Equal Employment Officer for the District and is responsible for coordination and implementation of the District's Affirmative Action Plan.

35. No corrective action was taken by either Darter or Franklin after Fain reported the hostile work environment.

36. Darter confirmed in the October meeting that Fain's performance was outstanding, stating, "I think you're doing a bang-up job of doing your job," and noting that "evaluations are coming up, you were gonna get to see it."

37. No annual evaluation was provided to Fain at any point after that meeting.

38. On or about October 16, 2020, Darter called Fain to apologize for accusing him of starting the rumor as Franklin had previously alleged. Darter told Fain that Brom admitted to Franklin he was the one who started the rumor about Franklin and Darter's romantic relationship.

39. Fain was Brom's immediate supervisor. Fain asked Darter if he needed to initiate disciplinary action against Brom, knowing that Darter intended to discipline Fain when it was thought that Fain started the rumor. Darter told Fain to do nothing.

40. Darter's instruction to "do nothing" to discipline Brom shows clear disparate treatment that Darter was looking for any excuse to get rid of Fain because of his sexual orientation.

41. After the October 15, 2020, meeting, Fain experienced an increasingly negative attitude from Darter, and unless Fain initiated a conversation directly with Darter, Darter did not speak to him.

42. Franklin clearly suspected Fain was gay. During a conversation subsequent to the October 15, 2020, meeting, Franklin asked him about being single and his dating habits. In order to test the waters, Fain replied, "Who knows, maybe I should start batting for the other team and maybe that would expand my options."

43. Franklin replied, "Don't even joke about that," in a tone indicating that she felt strongly negative about Fain's sexual orientation.

44. On or about April 6, 2021, Fain was attending a training session at the Big Monon Bay office. When Fain entered the office, he found his coworkers (including Brom) speaking with the trainer about their girlfriends, wives, and ex-wives.

45. When Brom noticed Fain across the room, Brom commented in front of Fain's staff, "Oh, he don't care, he's fucking gay anyway." Several members of the Operations staff were present and heard the comment.

46. On or about April 7, 2021, Fain went into the Twin Lakes main office to drop off paperwork.

47. Fain noticed the door near the Board Room was unlocked (it was not supposed to be), and Fain informed Franklin. Franklin suggested that he advise Julie Morris ("Morris") (the Administrative Assistant) stating, "Well, you might tell Julie."

48. Morris' desk was about 30 feet away, and she had been listening in on the conversation because she then interrupted, raising her voice, and snapped back at Fain in a rude and unprofessional way about the door being unlocked.

49. A heated exchange ensued, in which Morris continued to talk back to Fain and implied that he should leave employment with Twin Lakes by stating, "I think it's time for you to leave!"

50. Franklin did not stop the altercation and supported Morris.

51. Fain reported the incident to Darter verbally the same day, and Darter indicated he would investigate.

52. On or about Monday, April 12, 2021, Darter asked Fain to come to the District Office for a meeting.

53. At the meeting, Darter presented Fain with a disciplinary action, citing Section III.N. of Appendix B of the District Personnel Policy Manual. The Disciplinary Action form contained specific details regarding the offense Fain allegedly committed.

54. Darter explained that he had obtained "four written statements" from Franklin, Morris, and two members of the Billing Office personnel about the incident. Darter read portions of the written statements submitted by Franklin and Morris, in which they accused Fain of saying things like "I don't care if the fucking door is locked or not" and that Morris was "not fucking management and would never work for him" and that he told Morris she would "get the fucking IR's" when he "fucking felt like it" and that he was "just reporting that the fucking door was unlocked." Darter stated based upon those statements "you're gonna get three days off without pay starting now."

55. Fain then immediately played Darter an audio-recording of the actual exchange that occurred, showing he never used the "f-word" as the statements falsely accuse him of doing multiple times. Darter admitted Fain had told the truth and asked for the disciplinary paperwork back, rescinding the now baseless disciplinary decision.

56. During the April 12, 2021, meeting, Fain brought the subject of his grievance to his immediate supervisor Darter (meeting requirements of Section 12.01 and 12.04 of the Personnel Policy Manual). This also met the requirement of Section 12.02 concerning a "good faith effort" to resolve the situation.

57. Fain informed Darter that at least two District employees had provided falsified written statements that Darter had used in the proposed disciplinary action against him, and Fain had played an audio-recording demonstrating conclusively that they had falsified written

8

statements. Their actions were a form of harassment toward Fain and violated several provisions of the "Uniform Rules and Regulations" set for in Appendix B of the Personnel Policy Manual.

58. Darter failed to make a "good faith effort to resolve each situation as it arises" as required by Section 12.02. Darter failed to fulfill his obligation under Section 12.04 which requires that the "supervisor will attempt to resolve the grievance informally as soon as possible and will render his/her decision orally and in writing to the aggrieved within twenty-four (24) hours or the next working day."

59. Darter's refusal to act to resolve the grievance, and ignoring Fain's report of a hostile work environment, reinforced Fain's suspicion that Darter was complicit in the harassment and falsification of records.

60. Darter's failure to discipline the employees who knowingly made false statements about Fain clearly demonstrates inconsistent application of Twin Lake's Personnel Policy Manual; thereby constituting disparate treatment.

61. Fain waited until the close of business on April 13, 2021, to allow Darter time to submit a written response to his grievance in accordance with Section 12.04. Fain received no written response; therefore, at approximately 9:30 PM on April 13, Fain submitted a formal written grievance via e-mail to Mr. Otto Leis ("Leis"), who is President of the Board of Trustees and a member of the Personnel Committee for the Twin Lakes Regional Sewer District. Fain attached the appropriate form for a Grievance bearing his signature and copied all members of the Board via e-mail.

62. Leis confirmed receipt of the grievance via e-mail correspondence dated April 14, 2021. In that correspondence, Leis requested a copy of the audio-recording from April 7, 2021, which Fain provided on April 14, 2021.

63. On or about April 30, 2021, the Board of Trustees held a "Special Meeting" which was called to order at 9:05 AM. A public record of this meeting shows Darter and Donald J. Tribbett, Twin Lakes' legal counsel, in attendance. Fain was not notified of this meeting.

64. The Board decided to terminate Fain's employment at this Special Meeting, and later that day Leis and Darter met with Fain to discuss this decision. Leis stated, "as I'm sure you're well aware we had a Board Meeting this morning." Fain responded, "I didn't realize that" as he had not been notified of the meeting. Leis continued, "and the uh…Board has elected that we no longer need your services." When Fain asked if there was a reason for termination Leis replied "Uhh, nothing that I'm at liberty to discuss with you at this time" and added "just that the board felt, uhh, needed to part ways."

65. On or about May 6, 2021, the Board of Trustees issued a written response and accused Fain of not properly following the "chain of command" for filing a grievance.

66. Fain presented an informal grievance on April 12, 2021, as well as a formal written grievance and appeal to the Board of Trustees on April 13, 2021. This was procedurally correct and timely. According to the Twin Lakes' Personnel Policy Manual, Section 6.02, provides:

> Employees, or members of the public in the case of discrimination in the provision of District services, are encouraged to rely on this policy and the commitment of the District that harassment will not be tolerated.
>
> Grievances for harassment may be brought by any employee under the District's grievance procedure, as outlined in section 12.0 of this handbook. **If any person involved at any step, such as a supervisor, is accused in such harassment, the employee may skip that step and proceed to the next step.**

67. Fain's immediate supervisor and the District Manager are the same individual, Mike Darter. The Twin Lakes' Personnel Policy Manual provides that, after filing with the employee's direct supervisor and then the District Manager, a grievance may be appealed to the Board of Trustees within two working days, which is exactly what Fain did on April 13, 2021.

Each member of the District Board of Trustees was copied via e-mail. Accordingly, the formal Grievance to the Board of Trustees was the next step for Mr. Fain to take in accordance with Section 12.01 and Section 12.04 of the Personnel Policy Manual.

68. Twin Lakes had no legitimate, non-discriminatory reason to terminate Fain.

69. On July 9, 2021, Fain filed a Charge of Discrimination with the EEOC against Twin Lakes.

### III.     LEGAL ALLEGATIONS

**Count I: Violation of Title VII – Discrimination on the Basis of Sexual Orientation**

70. Plaintiff incorporates all other paragraphs of this Complaint as if fully set forth here.

71. Fain is a member of a protected class due to his sexual orientation.

72. Fain met or exceeded Defendant's performance expectations at all times during his employment.

73. From February of 2020 through his last day of employment, Fain was subject to discrimination and a hostile work environment based on his sexual orientation.

74. Fain suffered one or more adverse employment actions, including discipline, termination, and a hostile work environment, impacting the terms and conditions of his employment.

75. The work environment at Twin Lakes was objectively and subjectively hostile towards homosexual employees, and sufficiently severe or pervasive to alter the terms or conditions of employment.

76. Defendant knew or should have known about the hostile work environment experienced by Fain and failed to take any reasonable steps to take corrective action or prevent the discrimination and hostile work environment from recurring.

77. Defendant treated Fain differently, and to his detriment, as compared to similarly situated heterosexual employees.

78. There is a causal connection between Fain's sexual orientation and Defendant's adverse employment actions towards him.

79. Fain has suffered damages as a result of Defendant's discriminatory actions, including but not limited to lost back pay, lost front pay, loss of future earning capacity, lost employer provided benefits, and emotional distress damages.

### Count II: Violation of Title VII – Retaliation

80. Plaintiff incorporates all other paragraphs of this Complaint as if fully set forth here.

81. Fain engaged in protected activity by opposing Defendant's unlawful employment practices, including but not limited to filing a complaint about the hostile work environment resulting from the negative and discriminatory treatment by his coworkers related to his sexual orientation.

82. Fain suffered one or more adverse employment actions, impacting the terms and conditions of his employment, including but not limited to discrimination based on his sexual orientation and a hostile work environment.

83. But for Fain's protected activities, Defendant would not have taken adverse employment actions towards him.

84. Defendant retaliated against Fain for filing a formal written grievance about the discriminatory treatment and hostile work environment.

85. Fain has suffered damages as a result of Defendant's retaliatory actions, including but not limited to lost back pay, lost front pay, loss of future earning capacity, lost employer provided benefits, and emotional distress damages.

## IV. RELIEF REQUESTED

Fain requests the following relief:

a. Compensatory damages;

b. Damages to compensate Fain for emotional distress, mental anguish, and pain and suffering;

c. All wages and other economic benefits lost as a result of Defendant's unlawful actions, including but not limited to back pay, front pay, loss of future earning capacity and employer provided benefits;

d. Damages to compensate Fain for harm to his reputation;

e. Liquidated damages and/or punitive damages;

f. All costs and reasonable attorney fees incurred in litigation in this action;

g. Pre-judgment and post-judgment interest; and

h. Any and all other legal and/or equitable relief to which Fain is entitled.

Respectfully submitted,

*/s/ Kathleen A. DeLaney*
Kathleen A. DeLaney (#18604-49)
Annavieve C. Conklin (#33875-32)
DELANEY & DELANEY LLC
3646 N. Washington Blvd.
Indianapolis, IN 46205

## JURY DEMAND

Plaintiff, Rodger Fain, by counsel, hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

*/s/ Kathleen A. DeLaney*
Kathleen A. DeLaney (#18604-49)
Annavieve C. Conklin (#33875-32)
DELANEY & DELANEY LLC
3646 Washington Blvd.
Indianapolis, IN 46205