UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

| | |
|---|---|
| RODGER FAIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CAUSE NO. 4:22-CV-31-PPS |
| ) | |
| TWIN LAKES REGIONAL SEWER DISTRICT, ) | |
| ) | |
| Defendant. ) | |

# OPINION AND ORDER

To be subject to Title VII, employers must have a minimum of 15 employees. The principal issue in this employment discrimination case before me on summary judgment is whether the defendant employer, Twin Lakes Regional Sewer District, has the requisite number of employees. The District is a municipal corporation run by a board appointed by local public officials. The board members show up to one meeting a month and get paid fifty bucks for their effort. If these board members are not "employees" under Title VII, then summary judgment for the District is required because it will have had fewer than 15 employees during the relevant time period. Under common law principles of agency, because the board members in this circumstance are more like employers than employees, summary judgment will be granted in favor of the District.

**Factual Background**

The District is an independent municipal corporation which performs services relating to the collection, treatment, and disposal of sewage for White County and

portions of Carroll County. [DE 42, RSOF[1] ¶ 1.] At the top of the hierarchy is a Board of Trustees. [*Id.* ¶ 2.] The Board is comprised of 7 trustees, each appointed by a committee of county commissioners and township trustees. [*Id.* ¶ 3.] Trustees are appointed to four-year terms. [*Id.* ¶ 4.] The President, Otto Leis, testified that he spends little more than an hour each month performing his board duties. [*Id.* ¶ 5.] The full Board meets regularly once a month, and meetings last on average about 45 minutes. *Id.*

For any meeting he or she attends, a Trustee receives a statutorily established flat fee payment of $50. [*Id.* ¶ 6.] Other than the meeting stipend, Trustees don't receive any other form of compensation or benefits from the District. *Id.* For the years in question (2020 and 2021), the Trustees are listed on the District's payroll rosters. [*Id.* ¶ 7.] The District's records show that no Trustee received more than $1,000 total, pre-tax compensation for his or her role on the Board in 2020 or 2021. [*Id.* ¶ 8.] Payroll taxes are withheld. [*Id.* ¶ 154.] Of course, given the paltry sum they are paid to be on the Board, every Trustee has a career and employment outside of their respective Board roles. [*Id.* ¶ 9.]

The District is divided into two departments: the Operations Department and the Administrative Department. [*Id.* ¶ 11.] Both departments ultimately report to the District Manager, Michael Darter. *Id.* Fain was the supervisor and highest ranking

---

[1] The parties complied with Local Rule 56-1(b)(2), and in response to Defendant's statement of material facts, the Plaintiff reproduced the movant's Statement of Material Facts verbatim, and indicated whether he disputes the asserted facts. Therefore, the Court will refer to the 56-1 Response to Defendant's Statement of Material Facts "RSOF" which includes the asserted facts and response from both sides. *See* DE 42.

person in the Operations Department.  During the time frame in question, the Administrative Department was supervised by a single Office Manager, Jackie Franklin. [*Id.* ¶ 12.]  Including Darter, Franklin and Fain, the District never had more than 14 non-Board-member employees in 2019, 2020, or 2021. [*Id.* ¶ 14.]

The facts that led to Fain's termination are not particularly relevant to my ultimate decision but I include a brief outline of them below just for a little context.  In the 2019 evaluation of Fain, Darter noted "use of profanity is forbidden with any and all employees of this district" and noted about Fain, "[t]his is one of the most unprofessional tactics employed and I am not going to tolerate it." [DE 37-16 at 7.]  On October 6, 2020, Darter disciplined Fain for an "outburst" in the office, and Fain was warned to "control his behavior." [DE 37-17 at 1.]  After this incident, Fain started making audio recordings every time he entered into the main office. [DE 42 ¶¶ 27-28.]  In mid-October 2020, Darter and Franklin had a meeting regarding a rumor in the office. [*Id.* at 9-10.]  Fain recorded this meeting and this recording, along with several others, were produced to the Court. [DE 36.][2]  Fain admits he used words like "bullshit" and "shit" in the October meeting with Darter. [DE 42 ¶ 34.] During this meeting, Fain remarked that he gets teased all the time for not having a "steady girl" or a wife, and that he is "supposedly homosexual," but he just puts up with it. [*Id.* ¶ 36.]  When Fain stated he didn't know what he was supposed to do about it, and he didn't care what

---

[2] The court could not access the audio recordings due to the submitted format.  But because this case turns on whether the District had enough employees to be considered an employer under Title VII, the actual content of the recordings is irrelevant.

they thought, Darter said that Fain "could file any kind of paperwork [he] needed to make that all stop, but [he] couldn't act upon things that aren't requested." [*Id.* at 13.]

On April 7, 2021, a verbal altercation occurred between Fain and another employee. [DE 42 at 14-15.] During the exchange, Fain used some swear words, prompting another grievance to be filed against him. [DE 42 ¶ 39, ¶ 42.] After meeting with Fain, Darter referred the matter to the District's Board. [*Id.* ¶ 57.] Later that day, Fain drove his District-issued truck to a local grocery store. [*Id.* ¶ 59.] There, Fain was involved in a verbal altercation with a member of the public, Mr. James Cade. *Id.* I don't need to go into all the details, but it's enough to say that Fain told Cade in the parking lot to "stop acting like an asshole" and Cade took umbrage. *Id.* He took down the license plate number on the District truck Fain was driving and filed a written complaint at the District office, describing the District employee. [DE 42 ¶ 61; DE 37-26 at 1-2.] Darter received Cade's complaint and conveyed it to the Board. [DE 42 ¶ 62.] At its next meeting, the Board voted to terminate Fain which was effectuated later that day. [*Id.* ¶ 67.]

Regarding Fain's sexual orientation, he privately came out in 2019, sharing the information only with family members who he had no reason to suspect disclosed this information to anyone at the District. [*Id.* ¶ 75.] Fain told only one employee, Annette Reed, that he was gay in approximately March 2021. *Id.* It is undisputed that Reed never told any other District employee about Fain's sexual orientation. [*Id.* ¶ 77.] It is also undisputed that Fain never told the Board he was gay, never reported he was

subject to unwanted or unwelcome teasing about his sexual orientation, or that he ever attempted to report unlawful employment discrimination.  [*Id.* ¶ 90.] Fain's sexual orientation was never discussed during any of the three April 2021 Board meetings. [*Id.* ¶ 92.]

## Discussion

Fain filed a two-count complaint against the District, claiming discrimination and retaliation, both under Title VII. [DE 1.] The District now seeks summary judgment. Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  I must take the facts in the light most favorable to the party opposing the motion.  *Fulk v. United Transp. Union*, 160 F.3d 405, 407 (7th Cir. 1998).

This case rises and falls on whether the District has enough employees to be covered by Title VII.  Both parties concede that at all relevant times, the District had at most 14 employees not including members of the Board of Trustees. [DE 34 at 8; DE 43 at 5.]  So everyone agrees that Title VII is applicable here only if the Board members are considered "employees" for purposes of the statute.

Title VII only applies to the conduct of "employers" which has been defined (unhelpfully) by statute as " a person . . . who has fifteen or more employees for each

working day in each of twenty or more calendar weeks in the current or preceding calendar year." 42 U.S.C. § 2000e(b); *see also Chavero v. Local 241, Division of Amalgamated Transit Union*, 787 F.2d 1154, 1156 (7th Cir 1986). The plaintiff has the burden of establishing the defendant has the requisite number of employees for Title VII coverage. *Mizwicki v. Helwig, D.C., P.C.*, 196 F.3d 828, 831 (7th Cir. 1999).

The Supreme Court has stated that the primary consideration in determining whether an individual is an "employee" for purposes of Title VII is whether an "employment relationship" exists. *Walters v. Metro. Educ. Enters., Inc.*, 519 U.S. 202, 206 (1997). This circular logic is no more helpful than the statutory language, but the Court went on to state that an "employment relationship" is most readily demonstrated by the "payroll method," or whether the individual appears on the employer's payroll. *Id.*

Fain insists that this case is easy: the "payroll method" is dispositive because the Trustees were "on the payroll." End of story, according to Fain. But it's not that simple because the Supreme Court in *Walters* went on to say that the payroll test is not always dispositive: "an individual who appears on the payroll but is not an 'employee' under traditional principles of agency law, *see, e.g., Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323-24 (1992), would not count toward the 15-employee minimum." *Walters*, 519 U.S. at 211-12.

Six years after *Walters* was decided, the Supreme Court amplified on the "principles of agency law" as the touchstone for the analysis in *Clackamas Gastroenterology Assocs., P.C. v. Wells*, 538 U.S. 440 (2003). The specific question was

-6-

whether a shareholder-director of a professional corporation was better characterized as an employee or an employer under the Americans with Disabilities Act.[3]  In *Clackamas*, the Court looked to the "common law's definition of the master-servant relationship" for "helpful guidance" in answering that question. *Id*. at 448.  *Clackamas* listed six factors, derived from EEOC regulations, that should be considered in the inquiry:

> (1) Whether the organization can hire or fire the individual or set the rules and regulations of the individual's work;
>
> (2) Whether and, if so, to what extent the organization supervises the individual's work;
>
> (3) Whether the individual reports to someone higher in the organization;
>
> (4) Whether and, if so, to what extent the individual is able to influence the organization;
>
> (5) Whether the parties intended that the individual be an employee, as expressed in written agreements or contracts; and
>
> (6) Whether the individual shares in the profits, losses, and liabilities of the organization.

*Clackamas*, 538 U.S. at 449-50.

Several courts since *Clackamas* have used these common-law agency principles as the touchstone in deciding who qualifies as an employee under Title VII.  For example, in *Stone v. Indiana Postal & Federal Employees Credit Union*, No. 1:05-cv-114, 2005 WL 2347226, at *3 (N.D. Ind. Sept. 26, 2005), in analyzing whether members of a credit

---

[3]Although *Clackamas* is a case under the ADA that difference is unimportant because the question of who is an "employee" is the same whether the operative civil rights statute is the ADA, the ADEA or Title VII.  *See Clackamas*, 538 U.S. at 441 n.1.

committee constituted employees under Title VII, the Court recognized the payroll method was "not necessarily determinative." Rather, the *Stone* court also considered factors relevant to common-law agency in determining the credit committee members were not actually employees. *Id.* at *3-5. Other courts have used this approach, applying agency principles. *See Marshall v. G.E. Marhsall, Inc.*, No. 2:09-cv-198 APR, 2014 WL 1414864, at *7-*8 (N.D. Ind. Apr. 14, 2014) (using factors outlined in *Clackamas* and considering agency and control in looking at whether a shareholder was an employee for purposes of Title VII, noting "[s]hareholders and directors generally are employers rather than employees"); *Chavero*, 787 F.2d at (7th Cir. 1986) (noting "[d]irectors are traditionally employer rather than employee positions," and finding the executive board members of the transit authority were not employees of the union because they did not perform traditional employee duties); *Smith v. Castaways Family Diner*, 453 F.3d 971, 977-79 (7th Cr. 2006) (employing framework set out in *Clackamas* to determine if individuals qualified as employees).

While these factors are all helpful, none of them is dispositive, and the Supreme Court has highlighted that "all of the incidents of the relationship" are properly considered. *Clackamas*, 538 U.S. at 451. Moreover, the fundamental question is whether a given individual may exert control over the organization or, conversely, is subject to the organization's control. *Smith*, 453 F.3d at 977. If the answer is the former, the person is considered an "employer" under common law principles, and therefore, "must be excluded from the employee roster for purposes of the fifteen-employee

minimum" *Id.*

Let's take a stroll through the *Clackamas* factors. The first is whether the organization can hire or fire the individual or set the rules and regulations of the individual's work. The Trustees are appointed by a committee of county commissioners and township trustees elected by the localities benefitting from the District's service. Each Trustee's appointment is a four-year term. While they may voluntarily withdraw from their appointment, there is no process for their involuntary removal. [Leis Dep., DE 37-4 at 55.] Fain points out that Trustees may be asked to step down if they are not performing their duties, but that is not the same thing as being subject to firing; moreover, the request to step down would come from the Board itself, not any outside person or entity. [DE 39-1 at 54-55.] While Fain suggests that the Trustee's appointment somehow weighs in favor of employee status, the fact that they aren't "self-appointed" is not indicative of anything. Indeed, a corporate board of directors is usually "appointed" by its shareholders, and a limited liability company's board of directors is typically appointed by its members. *See* Ind. Code § 23-1-30-9 (regarding election of corporate directors); Ind. Code § 23-18-4-1 (regarding appointment of managers in a limited liability company, generally).

What's more, the Seventh Circuit has already squarely held that "members of boards of directors are not employees for purposes of Title VII coverage under any standards," *Chavero*, 787 F.2d at 1156, notwithstanding that they are also not traditionally self-appointed. *See Smith*, 453 F.3d at 978; *Marshall*, 2014 WL 1414864, at *7.

Finally, Fain suggests that because the Trustees do not individually set their own rules and schedules for work, but rather attend the meetings at the established times and work collectively, they are employees. [DE 43 at 9.] While an individual Trustee may not unilaterally set dates and times for the District meetings, there is no evidence that any other entity other than the Board itself schedules the meetings. The Board is created by statute, Ind. Code ¶ 13-26-4-1, and conducts hearings and meetings of the District, *see* Ind. Code ¶ 13-26-4-8. On balance, this first factor weighs in favor of the Trustees not counting as employees.

The second factor, whether, and to what extent the organization supervises the individual's work, also weighs in favor of finding the Trustees are not employees. There is really no evidence that the Board is supervised *by anyone*. The Board is statutorily designated as the "governing body of the [D]istrict," and it is undisputed that it sits at the top of the District's organizational hierarchy. *See* Ind. Code § 13-26-4-1 ("The board of trustees of a [sewer] district is the governing body of the district"); *see also* DE 37-2 (organization chart); DE 37-3, Fain Dep. at 50-51 (acknowledging the Trustees did not report to anyone within the District's organization).

The Trustees also don't report to anyone higher in the organization (factor three). And they are able to influence the organization because they retain discretion for all hiring and termination decisions of the District (factor 4). Although Fain claims the fact that the Board can hire and fire employees signals they are employees, *see* DE 43 at 10, this assertion is made without citing to any authority and is, frankly, counterintuitive.

In small organizations like this one, generally it is the *employer* that makes hiring and firing decisions.

Factor five is whether the parties intended the individuals to be employees. None of the Trustees have written contracts reflective of an employment agreement, and they all have outside careers. Moreover, let's be pragmatic for a moment. No rational person appointed to a municipal board who works at most one hour a month and gets paid fifty bucks to show up at a meeting views it as a "job." It's more akin to being an active community member interested in public service. This factor also weighs in favor of finding the Trustees are an employer.

The Trustees do not share in the District's profits, losses, or liabilities (factor 6), but they don't receive anything close to resembling a living wage for their efforts on the Board either. Moreover, some courts have held that, as a matter of law, the kind of "director's fees" that the Trustees receive is not the type of compensation indicative of any employment relationship. *See Owens v. Southern Dev. Council, Inc.,* 59 F.Supp.2d 1210, 1215-16 (M.D. Ala. 1999) ("'Compensation' is synonymous with salary or wages" and "to the extent that . . . board members received only a director's fee and expenses from [the defendant organization], the court finds as a matter of law that the directors do not receive compensation from [said organization]").

At least the first five factors set out in *Clackamas* indicate that the Trustees should be considered an employer instead of employees for purposes of Title VII. And the last factor is at most, neutral.

In summary, the District's Trustees possessed "authority and interests . . . so aligned with the [District's] business as to render them the legal personification *of* the business, i.e., principals rather than agents." *Smith*, 453 F.3d at 978 (emphasis in original). That qualifies them as employers, who do not count toward the 15-employee requirement of Title VII. *See Owens*, 59 F.Supp.2d at 1214. Based on the record before the court, no reasonable jury could conclude otherwise. Therefore the District is entitled to summary judgment on this basis alone.

## Conclusion

For the aforementioned reasons, Defendant Twin Lakes Regional Sewer District's Motion for Summary Judgment. [DE 33] is GRANTED, and the case is DISMISSED WITH PREJUDICE. The Clerk is ORDERED to CLOSE this case.

ENTERED: January 22, 2024.

/s/   Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT